# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VOEGELE MECHANICAL, INC., | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No. 18-3018 |
| LOCAL UNION NO. 690 OF THE UNTED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPE FITTING INDUSTRY OF THE UNTED STATES AND CANADA, | : | |
| Defendant. | : | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                                 AUGUST  19, 2019

  Presently before the Court is the Second Motion to Dismiss or, in the Alternative, to Stay Proceedings Pending Arbitration filed by Defendant Local Union No. 690 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada ("Local 690"), Plaintiff Voegele Mechanical, Inc.'s ("Voegele") Memorandum of Law in Support of Reply in Opposition to Motion to Dismiss, Local 690's Reply, and Voegele's Sur-Reply.  For the following reasons, Local 690's Motion to Dismiss is granted.

## I.     BACKGROUND

  On or about September 11, 2017, Voegele entered into a contract with Hutter Construction Corporation ("Hutter") whereby Voegele agreed to provide and install a central heating and plumbing system for a new multi-unit apartment complex located at 401 Race Street in Philadelphia, Pennsylvania (the "Project").  (Am. Compl. ¶¶ 10, 14.)  Hutter acted as the

general contractor for the Project. (*Id.* ¶ 14.) Both non-union and union contractors and members performed work on the Project. (*Id.* ¶¶ 13, 15, 17.)

Voegele and Local 690 are parties to a collective bargaining agreement ("CBA") effective May 1, 2016 to April 30, 2019. (*Id.* ¶¶ 6, 7, Ex. A (CBA).) The CBA contains a no-strike clause, as well as a grievance procedure culminating in arbitration. (*Id.*) The CBA contains the following arbitration clause:

> It is mutually agreed that all disputes of any nature whatsoever which may arise between the parties hereto, or their respective individual members, shall be submitted to the Joint Arbitration Board, which shall consist of three (3) members of EMPLOYERS' ASSOCIATION and three (3) members of the LOCAL UNION.

(CBA art. XXIII, § 1 – Adjustment and Arbitration of Disputes.) Under Article VIII of the CBA, Local 690 agreed to furnish competent plumbers and apprentices to Voegele Mechanical. (CBA art. VIII, § 1 – Union Membership.) In Appendix A to the CBA, the Union agreed there would be no work stoppages "due to unauthorized or illegal strikes, lockouts, disputes, or grievances." (CBA app. A.) Appendix A further provides that "[w]orkmen shall be on the job at the designated starting time, and will not leave until the designated quitting time." (*Id.*) Further, Article XXIII of the CBA sets forth procedures for the settlement of disputes and grievances arising under the terms and conditions of the CBA, and provides that all questions involving the interpretation of the CBA shall be referred to a grievance procedure ending in binding arbitration, and that no dispute, whether jurisdictional or otherwise, shall result in any stoppage of work or lockout during any dispute. (CBA art. XXIII – Adjustment and Arbitration of Disputes.)

In October 2017, a labor dispute arose at the Project. On or about October 27, 2017, members of a different trade union set up a picket line at the Project to protest the presence of a

2

non-union contractor working on the Project. (*Id.* ¶ 15.) Voegele alleges that its union member employees left the Project because of the picket line. (*Id.* ¶ 16.) Hutter then set up a dual or reserve gate system whereby one entrance to the Project was for use of union contractors, their employees, and their suppliers and the other gate for the non-union contractors, their employees and suppliers. (*Id.* ¶ 17.) Voegele alleges that Local 690 induced, encouraged, and told its members to refuse to honor the dual gate system and to not cross any picket line. (*Id.* ¶ 18.) It further alleges that Local 690 instructed its members to do so in writing through a card which it distributed to its members working on the Project. (*Id.*)

In March 2018, members of the local Northeast Regional Council of Carpenters Union (the "Carpenter's Union") began picketing the non-union gate at the Project. (*Id.* ¶ 19.) The Carpenters Union does not represent Voegele's employees and they did not picket the gate or entrance used by Local 690 members. (*Id.*) However, Voegele alleges that its employees represented by Local 690 followed Local 690's orders and refused to cross the Carpenter's Union's picket line. (*Id.* ¶ 20.) The Carpenter's Union picketed the Project throughout April 2018 and each time, as Local 690 allegedly ordered, Voegele's employees refused to report for work. (*Id.* ¶¶ 22-25.) Ultimately, Hutter informed Voegele that it was in breach of its contract with Hutter because it was unable to consistently provide labor to the Project and terminated Voegele's contract. (*Id.* ¶ 28.) Hutter's termination caused Voegele to lose an estimated $675,000 in lost profits. (*Id.* ¶ 31.) On or about July 20, 2018, Voegele was forced to shut down and go out of business. (*Id.* ¶ 32.)

## II.   PROCEDURAL HISTORY

On July 19, 2018, Voegele filed a Complaint against Local 690. (*See* Doc. No. 1.) On August 7, 2018, Voegele filed an Amended Complaint against Local 690, which includes Count

3

One "Violation of Section 303 of the Labor Management Relations Act" ("Count One – Section 303/Secondary Boycott") which relates to allegations of a secondary boycott in violation of the fair labor standards,[1] and Count Two "Breach of Contract in Violation of Section 301 of the Labor Management Relations Act" ("Count Two – Section 301/Breach of CBA") regarding a breach of the CBA.[2] (*See* Doc. No. 4.)

Specifically, Count One – Section 303/Secondary Boycott states:

> 35. Since on or about March 2018, Local 690, through its officers, agents, representatives and members, engaged in, or induced or encouraged members employed by Voegele Mechanical to engage in a unlawful strike or work stoppage, and concerted suspension of work, and/or endorsed or ratified the actions of its members in engaging in an unlawful strike or work stoppage, where a goal of the strike or work stoppage, where the goal was not to preserve work for Voegele Mechanical employees, but rather was to coerce or restrain secondary employers such as union contractor Voegele Mechanical, and the general employees and the general contractor, to cease doing business with non-union contractors on the 401 Race Street job.
>
> 36. The Union's unlawful strike, work stoppage and concerted suspension of work violated the prohibition on secondary boycotts contained in 29 U.S.C. § 158(b)(4), and 29 U.S.C. § 187(a), and Voegele Mechanical has suffered damages as a result.

---

[1] Section 303 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 187, creates a cause of action for damages for violations of the secondary boycott provisions of section 8(b)(4) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(b)(4). Regarding secondary boycotts, "Section 8(b)(4)(ii)(B) prohibits a union from inducing a person to refuse to work for a neutral employer with the purpose of compelling that employer from doing business with the primary, offending employer." *U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 164, AFL-CIO*, 500 F. App'x 198, 200 (3d Cir. 2012) (citing *Limbach Co. v. Sheet Metal Workers Int'l Ass'n*, 949 F.2d 1241, 1249 (3d Cir. 1991)). "The proscribed methods used to achieve the objectives include threatening, coercing, or restraining the secondary employer." *Limbach*, 949 F.2d at 1249. "The purpose of the prohibition against secondary boycotts is to shield unoffending employers from pressures in disputes not their own, though preserving the rights of unions to bring pressure to bear on offending employers in primary labor disputes." *Id.* at 1249-50.

[2] Section 301 of the LMRA creates a federal cause of action for breach of a collective bargaining agreement. 29 U.S.C. § 185. "Section 301 confers federal jurisdiction and a cause of action, while liability is determined by an analysis of the CBA itself." *Bricklayers & Allied Craftworkers Local 1 of PA/DE v. Penn Valley Tile, Inc.*, 175 F. Supp. 3d 487, 492 (E.D. Pa. 2016) (citation omitted). Section 301(a) "is not merely jurisdictional, but . . . calls on the federal courts to create a uniform federal common law of collective bargaining, with the primacy of arbitral resolution of industrial disputes as its centerpiece." *Voilas v. Gen. Motors Corp.*, 170 F.3d 367, 372 (3d Cir. 1999).

(*Id.* ¶¶ 35-36.)

In Count Two – Section 301/Breach of CBA, Voegele asserts:

> 43. By instructing its members not to work when there was a picket line at the job, and/or failing and/or refusing to direct its members to work at 401 Race Street job, Local 690 failed to provide labor and thus violated the terms of the CBA, and Local 690 endorsed and/or ratified the actions of its members in violating the terms of the CBA.
>
> 44. The Union's unlawful actions caused the general contractor to terminate Voegele Mechanical from the 401 Race Street job.

(*Id.* ¶¶ 43-44.) Both counts allege identical damages of $675,000. (*Id.* ¶¶ 38, 45.)

Originally, Local 690 filed a Motion to Dismiss on December 10, 2018. (Doc. No. 10.) Local 690 explains that "[a]fterwards, Voegele's counsel contacted Local 690's counsel and suggested the parties file a Joint Stipulation/Proposed Order that Count Two of Plaintiff's Amended Complaint proceed to Arbitration and Count One be stayed." (Def.'s Mem. Law Support Second Mot. to Dismiss at 3) (citing Doc. No. 10). On December 27, 2018, the Court signed the parties' Stipulation and Order stating that Count One of Plaintiff's Amended Complaint shall be stayed pending the arbitration proceedings regarding Count Two. (*Id.*) (citing Doc. No. 12). On February 15, 2019, the Joint Arbitration Board heard testimony regarding Voegele's grievance. (Doc. No. 14, Ex. 1 (Joint Arbitration Board Decision).) The Joint Arbitration Board defined the issue as: "Local 690's alleged violation of the CBA and the Labor Management Relations Act for allegedly failing to provide Labor on the 401 Race Street Job." (*Id.*) After hearing the evidence presented, the Joint Arbitration Board decided that "[b]ased on the information and testimony presented to the Joint Arbitration Board on Friday, February 15, 2019, the Board found on a unanimous decision in favor of Local 690 and against the Grievant." (*Id.*)

5

On March 14, 2019, Local 690 filed its Second Motion to Dismiss or, in the Alternative, to Stay Proceedings Pending Arbitration.[3] (Doc. No. 16.) Voegele filed its Response in Opposition on April 4, 2019. (Doc. No. 17.) Local 690 filed a Reply, and Voegele filed a Sur-Reply. (Doc. Nos. 18, 19.) Oral argument was held on May 21, 2019. (Doc. Nos. 20-22.)

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows a party to move for dismissal of any claim for which the district court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). A challenge to subject matter jurisdiction can be either facial or factual. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Id.* (citations omitted). "In reviewing a factual attack, the court may consider evidence outside the pleadings." *Id.* (citations omitted). "The trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen*, 549 F.2d at 891. Also, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.*

In this case, Local 690 is asserting a factual Rule 12(b)(1) challenge. The facts and our analysis are based on the Amended Complaint, the parties' briefs and accompanying documents, including the Joint Arbitration Board's Decision, which has not been challenged as to authenticity, and the parties' arguments made during oral argument. *See Hartig Drug Co. Inc. v.*

---

[3]Local 690 moves for dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) (lack of subject matter jurisdiction) and 12(b)(6) (failure to state a claim upon which relief can be granted). (*See* Def.'s Second Mot. to Dismiss.)

*Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016) (stating that a court may weigh and consider evidence outside of the pleadings when reviewing a factual challenge). "When considering a factual challenge, 'the plaintiff [has] the burden of proof that jurisdiction does in fact exist.'" *Id.* (quoting *Mortensen*, 549 F.2d at 891).

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, creates substantive federal law regarding the enforceability of arbitration agreements. *See Hamilton Park Health Care Ctr. Ltd. v. 1199 SEIU United Healthcare Workers E.*, 817 F.3d 857, 863 (3d Cir. 2016) (stating that "there is a strong federal policy favoring the speedy resolution of labor disputes through arbitration"). The FAA provides that agreements to resolve disputes by arbitration "shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178 (3d Cir. 1999) ("The FAA makes arbitration agreements enforceable to the same extent as other contracts"); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr.*, 460 U.S. 1, 24 (1983) (acknowledging that the arbitrability of a particular dispute is to be determined with a "healthy regard for the federal policy favoring arbitration").

"A collective bargaining agreement represents a contractual accord reached between an employer and its employees." *Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 240 (3d Cir. 2005), *as amended* (Mar. 17, 2005). "If such a contract includes an arbitration clause, it is assumed that the parties bargained for a grievance resolution procedure in which an arbitrator would interpret the agreement." *Id.* "[I]t has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted

dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). "Doubts should be resolved in favor of coverage." *Id.* (citations omitted).

## IV.   DISCUSSION

Count One – Section 303/Secondary Boycott asserts an unfair labor practices claim under Section 303 of the LMRA, 29 U.S.C. § 187, which allows a damages action for violations of the secondary boycott provisions of Section 8(b)(4) of the NLRA, 29 U.S.C. § 158(b)(4). *See Limbach*, 949 F.2d at 1246. "It is an unlawful labor practice for a union to engage in a secondary boycott." *U.S. Info. Sys.*, 500 F. App'x at 200. "Section 8(b)(4)(ii)(B) prohibits a union from inducing a person to refuse to work for a neutral employer with the purpose of compelling that employer from doing business with the primary, offending employer." *Id.* (citing *Limbach*, 949 F.2d at 1249). "The secondary boycott provisions are intended to prevent a union from influencing a neutral third party's relationship with a primary employer in order to compel the primary employer to consent to the union's demands." *Id.* (citing *Taylor Milk Co. v. Int'l Bhd. of Teamsters, AFL–CIO*, 248 F.3d 239, 246 (3d Cir. 2001)). "Regardless of whether 'the sole object of the strike was secondary' it is unlawful 'so long as one of the union's objectives was to influence the secondary employer to bring pressure to bear on the primary.'" *Id.* (quoting *R.L. Coolsaet Constr. Co. v. Local 150, Int'l Union of Operating*, 177 F.3d 648, 655 (7th Cir. 1999)).

Regarding Count One – Section 303/Secondary Boycott, Voegele alleges that Local 690 induced and/or encouraged its union member employees to refuse to cross a picket line in an effort to force Voegele and/or Hutter from doing business with non-union contractors working on the Project. (Pl.'s Opp'n to Def.'s Second Mot. to Dismiss at 5.) Local 690 argues that Voegele's secondary boycott claim should be dismissed for failure to state a claim upon which relief can be granted because "[t]he Joint Arbitration Boards [sic] final and binding unanimous

8

decision held that Local 690 did not fail to provide labor on the 401 Race Street Site or violate the [LMRA]." (Def.'s Mem. Law Support Second Mot. to Dismiss at 5.) It argues that "[o]n February 25 [sic], 2019, the arbitrators correctly decided there was no illegal strike and the Union did not violate 8(b)(4)." (*Id.* at 9.) It asserts that the Joint Arbitration Board's conclusion is final and binding on Voegele and fully supports promptly dismissing Count One. (*Id.* at 5.)

Voegele argues that, "contrary to Local 690's claims, the arbitration panel did not make a finding that 'the Union did not violate 8(b)(4).'" (Pl.'s Opp'n to Def.'s Second Mot. to Dismiss at 13.) Voegele states that the Court should reject any notion that the Joint Arbitration Board issued a final and binding ruling on the current dispute because "[t]he issue of Local 690's violation [sic] 8(b)(4) was never presented to the panel, the panel made no rulings on it, and that claim was specifically reserved in the parties' joint stipulation to arbitrate." (*Id.*)

We find that the Joint Arbitration Board's decision that Local 690 did not violate either the no-strike clause in the CBA or Section 301 of the LMRA (Count Two), which is a breach of contract claim, does not necessarily mean that the secondary boycott claim in Count One, which alleges that Local 690 engaged in an unfair labor practice under Section 8(b)(4) of the NLRA, *i.e*, secondary boycott, is meritless under the facts of this action. First, it is clear that the arbitration of Count Two – Section 301/Breach of CBA addressed breach of the CBA in violation of Section 301 of the LMRA, which gives federal district courts original jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). Since both Count One and Count Two allege identical damages of $675,000, and Voegele cannot recover damages more than once, there is no doubt that the arbitration of the Section 301 claim (Count Two) could have obviated the need to pursue the Section 303 claim (Count One) if the Joint

Arbitration Board found that Voegele is entitled to $675,000.  *See Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am., AFL-CIO*, 544 F.2d 1207, 1215 (3d Cir. 1976) ("Although Bechtel has the right to prosecute its claim on both the contract theory (under section 301) and the tort theory (under section 303), Bechtel cannot recover damages more than once.  If Bechtel should prevail in the arbitration of its section 301 claim for breach of contract and be awarded the damages it claims, Bechtel should have no further claim against the union under section 303.").  However, this is not the case in our lawsuit because the Joint Arbitration Board found in favor of Local 690 and did not award any damages to Voegele.  Notably, the *Bechtel* Court did not include a discussion that a Section 303 claim cannot survive if the Section 301 claim is found in favor of the Union, which is exactly what Local 690 argues here.

Moreover, we point out that the Joint Arbitration Board may have made factual findings regarding its consideration of the Section 301 breach of contract claim regarding the CBA that would be useful in the disposition of the Section 303 secondary boycott issue, but, we will never know because it merely issued a decision stating that it unanimously found "in favor of Local 690 and against the Grievant" regarding "Local 690's alleged violation of the CBA and the Labor Management Relations Act for allegedly failing to provide Labor on the 401 Race Street Job."  (Doc. No. 14, Ex. 1.)  We are left in the dark about any factual findings that the Joint Arbitration Board relied upon in making its conclusion and whether those findings impact Count One – Section 303/Secondary Boycott.  Local 690 asserts that "the arbitrators correctly decided there was no illegal strike and the Union did not violate 8(b)(4)," but fails to explain either how the Joint Arbitration Board decided Section 8(b)(4) of the NLRA regarding secondary boycott by addressing Count Two – Section 301/Breach of CBA or how it is deserving of preclusive effect.

(*See* Def.'s Mem. Law Support Second Mot. to Dismiss at 9.) Accordingly, we will not dismiss Voegele's Count One – Section 303/Secondary Boycott on this premise.

Next, we will address whether Count One – Section 303/Secondary Boycott is subject to arbitration under the CBA. The parties neither dispute the existence nor validity of the arbitration provision in the CBA. As previously explained, the CBA's arbitration clause states, in pertinent part, as follows: "It is mutually agreed that all disputes of any nature whatsoever which may arise between the parties hereto, or their respective individual members, shall be submitted to the Joint Arbitration Board. . . ." (CBA art. XXIII, § 1 – Adjustment and Arbitration of Disputes.) By containing the language that "all disputes of any nature whatsoever which may arise between the parties hereto" shall be arbitrated, we necessarily conclude that the arbitration clause is very broad. (*See id.*); *see also Griswold v. Coventry First LLC*, 762 F.3d 264, 271 (3d Cir. 2014) (finding the following arbitration language to be "fairly standard" and "interpreted to apply broadly": "[a]ll disputes and controversies of every kind and nature between the Parties arising out of or in connection with this Agreement") (citing *Battaglia v. McKendry*, 233 F.3d 720, 727 (3d Cir. 2000) ("[W]hen phrases such as . . . 'arising out of' appear in arbitration provisions, they are normally given broad construction.")); *Interstate Brands Corp. v. Bakery Drivers & Bakery Goods Vending Machines, Local Union No. 550*, 167 F.3d 764, 765 (2d Cir. 1999) (finding arbitration clause requiring parties to arbitrate "any act or conduct or relation between the parties hereto, directly or indirectly" as "unusually broad"). We also note that the arbitration clause contains neither exceptions nor restrictive language. Furthermore, it does not limit arbitrable issues to contractual causes of action. Giving the arbitration clause the broad scope intended by the parties, we conclude that the arbitration clause

extends to any dispute between the parties, as the plain language indicates, and is not limited to the terms of the CBA.

Voegele argues that Count One - Section 303/Secondary Boycott is not an arbitrable claim under the CBA. (Pl.'s Opp'n to Def.'s Second Mot. to Dismiss at 12-13.) It relies upon *Waco Scaffolding Co. v. Local 845, United Bhd. of Carpenters & Joiners of Am.*, which held that, unlike claims arising under Section 301 of the LMRA, the presumption of arbitrability is reversed for claims under Section 303. 585 F. Supp. 102, 107 (E.D. Pa. 1984) (citing cases). The *Waco* Court noted that suits brought under Section 301 are private contractual actions arising from alleged violations of the CBA, which are traditionally interpreted by arbitrators, and suits brought under Section 303 "are public tort actions arising from alleged violations of Section 8(b)(4) of the [LMRA] and are thus appropriate for the expertise and power of the courts." *Id.* at 107-08 ("Where suit is brought under Section 303 the merits of that action are governed by the statutory standards and remedies of the LMRA, and not by the terms of parties' collective bargaining agreement. Such issues of statutory interpretation and remedies are particularly suited to judicial resolution.").

The *Waco* Court went on to conclude that, in order to submit a claim for damages under Section 303 for arbitration, the arbitration clause must clearly and explicitly state that an arbitrator is to hear and determine the claims in tort. *Id.* at 108. The *Waco* Court concluded that there was no clear, explicit statement in the parties' contract conferring arbitral jurisdiction over the Section 303 tort claims. *Id.*; *see also Wright v. Universal Maritime Svc. Corp.*, 525 U.S. 70, 82 (1998) (holding that an arbitration provision in a collective bargaining agreement must contain a "clear and unmistakable" waiver of a statutory anti-discrimination claim before the

arbitration requirement for such statutory claims is waived);[4] *Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am., AFL-CIO*, 405 F. Supp. 370, 376-77 (M.D. Pa. 1975) (no waiver unless arbitration clause clearly and explicitly covers Section 303 claim), *aff'd on other grounds*, 544 F.2d 1207, *contra Farmland Dairies, Inc. v. Milk Drivers & Dairy Employees Union Local 680, Inter. Broth. of Teamsters, AFL-CIO*, 956 F. Supp. 1190, 1200 (D.N.J. 1997) (disagreeing with *Waco* and holding that Section 303 claims are arbitrable pursuant to an arbitration clause so expansive in its breadth as to reflect the parties' intent to resolve any and all disputes arising from the subject matter of the agreement between them through arbitration). Based on *Waco*, Voegele argues that Local 690's arbitration demand should be denied because "Local 690 can point to no 'clear, explicit statement' in the collective bargaining agreement which conferred arbitral jurisdiction over Section 303 and Section 8(b)(4) claims." (Pl.'s Opp'n to Def.'s Second Mot. to Dismiss at 13.)

We interpret Voegele's assertion to be that its claim does not lend itself to arbitration because it arises out of a violation of a federal statute; namely, the secondary boycott provisions of Section 8(b)(4) of the NLRA, 29 U.S.C. § 158(b)(4). Relying upon Section 303 of the LMRA, which creates a cause of action for damages suffered because of violations of Section 8(b)(4), Voegele argues that resolution of the present dispute is only proper in federal court. We

---

[4]In *Wright*, the United States Supreme Court ("Supreme Court") held that a longshoreman was not barred from suing his employer under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, notwithstanding a general arbitration clause in the collective bargaining agreement negotiated between his employer and his union. 525 U.S. at 82. *Wright* involved a union-negotiated waiver of an employee's statutory right to a judicial forum for employment discrimination claims, rather than raising them in arbitration. *Id.* at 80. In such situations, the Supreme Court applied the clear and unmistakable waiver standard. *Id.* at 81. The *Wright* Court stated that the clear and unmistakable standard does not apply to an "an individual's waiver of his own rights, rather than a union's waiver of the rights of represented employees." *Id.* at 80–81 (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35 (1991)) (holding that arbitration clause covering "any dispute, claim or controversy" required arbitration of claim brought under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, by individual employee in securities industry). In *Wright*, the Court examined the applicability of the clear and unmistakable standard in the context of a claim that a collective bargaining agreement included a waiver of rights, and concluded that the standard applies to a union's waiver of the rights of represented employees. *Id.* at 80–81.

13

find the analysis and conclusion by the United States Court of Appeals for the Second Circuit ("Second Circuit") in *Interstate Brands Corp. v. Bakery Drivers & Bakery Goods Vending Machines, Local Union No. 550, Int'l Bhd. of Teamsters* is directly on point with our case.[5] 167 F.3d 764. As a result, we will follow it.

In *Interstate Brands*, pursuant to a collective bargaining agreement, the Second Circuit found that an employer had contractually waived its right to litigate a Section 303 claim and the arbitration clause required the parties to arbitrate it. 167 F.3d at 769. The Second Circuit stated that "*Wright*'s 'clear and unmistakable' standard is based upon a concern about allowing a union to waive an individual employee's statutory rights - i.e., a concern about the waiver of one's rights by someone else." *Id.* at 767. "Where, however, one waives ones's own rights, the 'clear and unmistakable' standard is not required." *Id.* The Second Circuit held that the same concern is inapplicable to an employer that negotiated an agreement on its own behalf. *Id.* ("Such an employer has negotiated on behalf of itself."). In that situation, the *Interstate Brands* Court held that the court did not need to find that the waiver was clear and unmistakable. *Id.* ("We . . . see no reason why an employer that . . . has individually negotiated a CBA with a union should be held to have waived its statutory rights only if the waiver was 'clear and unmistakable.'").

Examining the wording of the arbitration clause, the *Interstate Brands* Court noted that a clause requiring arbitration of "any act or conduct or relation between the parties hereto, directly or indirectly" was "unusually broad" and "reasonably read to reach matters that go beyond the application and interpretation of the Agreement." *Id.* at 767-68. It further noted that the result was compelled by contract construction, without the use of any presumption, because the

---

[5]The United States Court of Appeals for the Third Circuit ("Third Circuit") has not yet spoken about whether an arbitration clause in a collective bargaining agreement may include a federal LMRA Section 303 action raising a violation of Section 8(b)(4) of the NLRA in the context of an employer waiving its own statutory right.

14

employer-plaintiff "agreed to arbitrate any dispute 'involving questions of interpretation or application of any clause or matter covered by [the] Agreement, *or* any act or conduct or relation between the parties [t]hereto, directly or indirectly.'" *Id.* at 768 (quoting parties' collective bargaining agreement). Focusing on the following words: "[A]ny act or conduct or relation between the parties," the Court stated that such language must "necessarily mean something other than 'questions of interpretation or application of any clause or matter covered by [the] Agreement,' for to hold otherwise would render this language mere surplusage." *Id.* (quoting *Rothenberg v. Lincoln Farm Camp, Inc.*, 755 F.2d 1017, 1019 (2d Cir. 1985)) (stating that an interpretation "that gives a reasonable and effective meaning to all the terms of a contract is generally preferred to one that leaves a part unreasonable or of no effect"). Finally, the *Interstate* Court concluded that "we hold the [employer-plaintiff's] LMRA § 303 claim comes within the scope of the arbitration clause." *Id.*

Under the facts of this case, we find that the very broad language of the arbitration clause in the CBA, to which Voegele undisputedly consented, compels the arbitration of Count One – Section 303/Secondary Boycott. Similar to the arbitration clause in *Interstate Brands*, the arbitration clause in the CBA is very broad in its scope. As previously explained, we find that the arbitration clause's language: "all disputes of any nature whatsoever which may arise between the parties hereto," has a broad sweep, and we reasonably read this language to reach matters that go beyond the application and interpretation of the CBA. (CBA art. XXIII, § 1 – Adjustment and Arbitration of Disputes.) Such a reading is compelled as a matter of contract construction without the use of any presumption.

Also, here, Voegele is an employer that contractually waived its own statutory right. Thus, our lawsuit involves a situation similar to the employer-plaintiff in *Interstate Brands*

15

because Voegele bargained on behalf of itself and waived its own right to a judicial forum. 167 F.3d at 767. We conclude that Voegele's Count One - Section 303/Secondary Boycott may be arbitrated despite the fact that there is no clear nor explicit statement to that effect. *See id.* ("Where . . . one waives one's own rights, the 'clear and unmistakable' standard is not required."); *see also Kiesel v. Lehigh Valley Eye Ctr., P.C.*, No. 05-4796, 2006 WL 1985788, at *7 (E.D. Pa. July 12, 2006) ("Here, Kiesel waived his own rights, which renders inapplicable *Wright*'s heightened standard. Accordingly, the court concludes that Kiesel's age discrimination claims fall within the scope of a valid arbitration agreement, and therefore must be resolved in arbitration."); *Ashton Med. Assocs., Inc. v. Aetna Health Mgmt., Inc.*, No. 2:05-23, 2006 WL 1674572, at *4 (S.D.W. Va. June 16, 2006) ("Where, however, one waives ones's own rights, the 'clear and unmistakable' standard is not required."); *Legal Aid Soc'y v. City of New York*, 114 F. Supp. 2d 204, 228 (S.D.N.Y. 2000) ("Because this argument entails a claim that Legal Aid waived its own statutory rights, the 'clear and unmistakable' standard does not apply and the agreement is instead interpreted according to ordinary principles of contract interpretation.").

This is not a situation where a union negotiated away an individual's right to a judicial forum for his/her statutory claim. Instead, our situation involves Voegele, itself, negotiating away its own right. If Voegele wanted to exclude such statutory claims from arbitration, it could have bargained for a narrower clause. Additionally, the factual allegations which underlie Count One - Section 303/Secondary Boycott touch on issues within the CBA and implicate rights and obligations thereunder. Voegele's claims under Sections 301 and 303 are from the same series of underlying events regarding the Project. *See Farmland Dairies*, 956 F. Supp. at 1203 ("Section 303 is tort-based rather than contract-based like Section 303, but this distinction should not remove claims arising under it from arbitration when the parties have executed a sweeping

16

agreement to submit disputes to that alternative forum."); *see also Installit, Inc. v. Carpenters 46 N. California Ctys. Conference Bd.*, 214 F. Supp. 3d 855, 865 (N.D. Cal. 2016) ("The complexity of an area of law, or the fact that a claim under a particular statute was traditionally heard in a judicial form, does not remove an otherwise arbitrable claim from arbitration.").

We take this opportunity to distinguish *Bechtel Corp. v. Local 215*, where the United States District Court for the Middle District of Pennsylvania held that, in order for a Section 303 claim to be arbitrable, the arbitration clause must clearly and explicitly include Section 303 claims. 405 F. Supp. at 376-77. In *Bechtel*, the plaintiff was a corporation that brought claims under Section 301 and Section 303 of the LMRA against the national and local labor unions for work stoppages related to jurisdictional disputes. *Id.* at 372–73. Specifically, the premise of the Section 303 claim was an alleged violation of Section 8(b)(4)(d) of the NLRA, prohibiting a union from engaging in a jurisdictional strike under certain circumstances. *Id.* at 377. Regarding a Section 303 claim, the *Bechtel* Court held that "[f]or such a claim to be arbitrable, the arbitration clause must clearly and explicitly state that the arbitrator is to hear and determine claims in tort." *Id.* at 376-77 (citations omitted). It went on to explain that "[t]his is logically so, because courts are not less competent than labor arbitrators to determine whether particular union activities violate a federal labor statute or to assess the extent of an employer's business remedies." *Id.* at 377 (citation omitted). It concluded that neither of the agreements at issue provided the necessary predicate for a reference of the matter to arbitration. *Id.*

On appeal, the Third Circuit did not discuss the ruling in *Bechtel* that Section 303 claims can only be submitted to arbitration if the arbitration clause clearly and explicitly states that the arbitrator is able to hear and determine it. *Bechtel Corp. v. Local 215*, 544 F.2d at 1215. In fact, the Third Circuit concluded that the parties demonstrated their intent to submit trade jurisdiction

17

disputes to the National Joint Board for the Settlement of Jurisdictional Disputes in the Building and Construction Industry by expressly excluding such trade jurisdiction disputes from arbitration. *Id.* at 1213 ("[B]oth agreements specifically exclude disputes from the reach of the arbitration provisions.").

Unlike our case, *Bechtel* did not address an unusually broad arbitration clause, such as the one before us, which reflects the parties' intent to resolve "all disputes of any nature whatsoever which may arise between the parties" through arbitration. *See Farmland Dairies*, 956 F. Supp. at 1200 (distinguishing *Bechtel* stating "[u]nlike this case, *Bechtel* did not have nor address an arbitration clause so expansive in its breadth as to reflect the parties' intent to resolve any and all disputes arising from the subject matter of the agreement between them through arbitration"). Also, we note, like the United States District Court for District of New Jersey in *Farmland Dairies* stated regarding the ruling in *Bechtel*, there is an argument that the value of earlier cases as precedent "has been eroded by the trend of gradual acceptance, beginning at the Supreme Court, of arbitration as a forum for statutory claims." *Id.* (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626-27 (1985) ("[W]e are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals should inhibit enforcement of the [Arbitration] Act in controversies based on statutes."); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith*, 7 F.3d 1110, 1118 (1993) (concluding that statutory ERISA claims may be submitted to arbitration)); *see also Gilmer*, 500 U.S. at 21 (holding that arbitration clause covering "any dispute, claim or controversy" required arbitration of claim brought under Age Discrimination in Employment Act by individual employee in securities industry).

Moreover, as stated by the *Farmland Dairies* Court, there is no showing that Congress intended that Section 303 claims should be non-arbitrable. *See Farmland Dairies*, 956 F. Supp. at 1202 ("Indeed, the plaintiff has not referred the Court to any policy or evidence of congressional intent that would preclude arbitration of these claims. Nor does the Court's review of the legislative history of § 303 reveal any evidence of intent to remove these claims from arbitration if the parties have indeed executed an arbitration agreement, the scope of which encompasses such claims."); *see also Installit*, 214 F. Supp. 3d at 865 ("Thus, absent evidence in the statute's text or legislative history that Congress intended to preclude a Section 303 claim from arbitration, this Court is bound to presume a Section 303 claim arbitrable.").

In sum, we conclude that Voegele's Count One - Section 303/Secondary Boycott comes within the scope of the expansive arbitration clause within the CBA. Due to the fact that Voegele waived its own statutory rights, we find that Count One can be arbitrated despite the absence of a clear and unmistakable statement to that effect. We are mindful that it would have been more efficient for the parties to have arbitrated both Count One – Section 303/Secondary Boycott and Count Two – Section 301/Breach of CBA instead of agreeing to only arbitrate Count Two. Also, if the parties could not reach an agreement on the arbitrability of Count One, it would have been prudent for them to have come to the Court to decide the issue as opposed to coming to the Court now, which is resulting in piecemeal arbitration.

Nevertheless, we will grant Local 690's Second Motion to Dismiss pursuant to Rule 12(b)(1) because Voegele's Count One – Section 303/Secondary Boycott must be submitted to arbitration. *See Organizational Strategies, Inc. v. Feldman Law Firm LLP*, 604 F. App'x 116, 117-19 (3d Cir. 2015) (acknowledging that the District Court dismissed the lawsuit for lack of subject matter jurisdiction because it determined that the parties' agreement required arbitration);

19

*Dimattei v. Diskin Motors, Inc.*, No. 16-5183, 2017 WL 1283943, at *1 n.1 (E.D. Pa. Apr. 6, 2017) (joining courts in this District that have dismissed claims subject to an arbitration agreement pursuant to Rule 12(b)(1)) (citing cases); *Allstate Ins. Co. v. Masco Corp.*, No. 06-3183, 2008 WL 183651, at *2 (E.D. Pa. Jan. 22, 2008) ("Where parties have agreed to submit claims to arbitration under a valid and enforceable arbitration clause or agreement, dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) is proper."); *c.f. Liberty Mut. Fire Ins. Co. v. Yoder*, 112 F. App'x 826, 828 (3d. Cir. 2004) (suggesting that Rule 12(b)(1) is not the proper vehicle to raise an arbitration issue). Consequently, we need not address Defendant's Motion to Dismiss pursuant to Rule 12(b)(6). *See Dimattei*, 2017 WL 1283943, at *1 n.1 (stating that court need not address whether plaintiff properly pleaded its claims through a Rule 12(b)(6) inquiry when case dismissed under Rule 12(b)(1)). The dismissal of the case is without prejudice to the filing of a subsequent arbitration proceeding.

      An appropriate Order follows.